UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | |
|---|---|
| LINDA ROBINSON, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL PERSONS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST HAWAIIAN BANK, DOE DEFENDANTS 1-50,<br><br>Defendants. | CIV. NO. 17-00105 DKW-RLP<br><br>**ORDER ADOPTING THE MAY 12, 2017 FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447** |

**ORDER ADOPTING THE MAY 12, 2017 FINDINGS AND
RECOMMENDATION TO GRANT PLAINTIFF'S
MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447**

Plaintiff Linda Robinson filed this action, on behalf of herself and an unidentified class of persons similarly situated, in Hawaiʻi state court against her debit card provider, First Hawaiian Bank ("FHB"), and Doe Defendants 1–50. *See* Notice of Removal, Ex. A, Compl., CV-17-1-0167-01 KTN (filed Jan. 27, 2017), ECF No. 1-2. FHB subsequently removed the action to this Court (ECF No. 1), and Robinson filed a motion to remand (ECF No. 20). On May 12, 2017, the Magistrate Judge entered his Findings and Recommendation to Grant Plaintiff's

Motion to Remand Pursuant to 28 U.S.C. § 1447 ("F&R").  ECF No. 27.  For the reasons stated below, the Court ADOPTS the F&R and GRANTS Robinson's Motion to Remand.

## BACKGROUND

Robinson is an FHB debit card holder who takes issue with the overdraft-related charges on her FHB bank account, which she contends were assessed in contravention of various common law principles and laws codified in the Hawai'i Revised Statutes ("HRS").

On June 15, 2016, Robinson filed a class action lawsuit against FHB in the Circuit Court for the First Circuit, State of Hawai'i.[1]  In the Complaint, Robinson challenges FHB's banking practices of imposing initial overdraft fees on debit card transactions approved and deducted on a "sufficient available balance," and the imposition of a continuous overdraft fee, which is assessed for each seven-day period that a customer's account has a negative balance.  Compl. ¶¶ 1–15, 22–55, 59–64.  As a result of these practices, the Complaint asserts that FHB is liable for: (1) violating Hawaii's Uniform Deceptive Trade Practice Act, HRS § 480-2(a) (declaring unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce") (Compl. ¶¶ 81–86); (2)

---

[1]Robinson cites Rule 23 of the Hawaii Rules of Civil Procedure, although the papers before this Court do not reflect that any individual class members have yet been identified.  *See* Compl. ¶ 73, ECF No. 1-2 (noting that the identity of thousands of potential class members "is within the knowledge of and can be ascertained only by resort to FHB's records").

conversion of funds via the "wrongful[] collecti[on] [of] overdraft fees from Plaintiff and the members of the Class" (Compl. ¶¶ 87–98); (3) unjust enrichment "from the imposition of overdraft fees . . . in an unfair, unconscionable, and oppressive manner" (Compl. ¶¶ 99–107); and (4) violating Hawaii's interest and usury laws, codified in HRS Chapter 478, by "knowingly charg[ing] and collect[ing] Continuous [Overdraft] Fees . . . that far exceeded the legal rate" permitted by HRS § 478-2" (Compl. ¶¶ 108–21).

FHB removed Robinson's action to federal court on March 6, 2017. ECF No. 1. FHB's removal petition is based on its assertion that Section 521 of the Depository Institution Deregulation and Monetary Control Act ("DIDA"), codified at 12 U.S.C. § 1831(d), completely preempts Robinson's fourth, state-law usury/interest claim. Notice of Removal ¶¶ 12, 14, ECF No. 1 ("State law usury claims are completely preempted by federal banking laws, including DIDA and the National Bank Act."). Specifically, FHB alleges that Robinson's legal arguments rest on her theory equating "continuous overdraft fees" by FHB to "interest" that is usurious under Hawaii state law. Notice of Removal ¶ 14. As such, FHB argues, removal to federal court is proper because "that inquiry is properly a matter of federal law and the subject of complete preemption." Notice of Removal ¶ 14.

On April 4, 2017, Robinson filed her Motion to Remand Pursuant to 28 U.S.C. § 1447 (ECF No. 20), asserting that removal was improper because

Robinson's state-law usury claim is not preempted by DIDA; thus, under the "well-pleaded complaint rule," no federal question appeared on the face of the Complaint, no exception to that rule applies, and federal jurisdiction would be inappropriate. *See* Mem. in Supp. of Mot., ECF No. 20-1 [hereinafter Remand Mem.]. FHB filed its Memorandum in Opposition to Robinson's Motion to Remand (ECF No. 24) on April 18, 2017.

On May 12, 2017, the Magistrate Judge entered the F&R (ECF No. 27), finding that "DIDA does not completely preempt state-law usury claims and does not establish the federal question jurisdiction necessary for removal of this action." F&R at 7. The Magistrate Judge therefore recommended that Robinson's Motion to Remand be granted. F&R at 13.

Before the Court are FHB's objections to the F&R, which urge the Court to:

> (1) Reject the Magistrate Judge's Findings that:
>
> [a] this case was not properly removed to federal court, F&R at 2;
>
> [b] DIDA does not completely preempt state-law usury claims and does not establish the federal question jurisdiction necessary for removal of this action, F&R at 7;
>
> [c] the language contained in Section 521 of DIDA does not completely preempt state usury law and therefore, DIDA does not provide the basis for federal question jurisdiction or removal[;]

4

> (2) Reject the Magistrate Judge's Recommendation that this Court grant Plaintiff's Motion to Remand Pursuant to 28 U.S.C. § 1447 (ECF No. 20) (the "Remand Motion"), F&R at 2, 13; and
>
> (3) Deny the Remand Motion.

Def.'s Obj. to F&R 3, ECF No. 28 [hereinafter Objections Memorandum or Obj. Mem.] (emphasis removed) (formatting altered). Robinson responded to these objections on June 9, 2017. *See* Pl.'s Resp. to Def.'s Obj. to F&R, ECF No. 29.

For the reasons stated below, the Court ADOPTS the F&R and GRANTS Robinson's Motion to Remand.

## STANDARD OF REVIEW

A motion to remand is a case dispositive motion that requires the issuance of findings and recommendations if initially reviewed by a magistrate judge. *See Flam v. Flam*, 788 F.3d 1043, 1047 (9th Cir. 2015) (citing *Williams v. Beemiller, Inc.*, 527 F.3d 259, 266 (2d Cir. 2008)); *Keown v. Tudor Ins. Co.*, 621 F. Supp. 2d 1025, 1029 (D. Haw. 2008). When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Under a de novo standard, this court reviews "the matter anew, the same as if it had not been heard before[] and as if no decision previously had been rendered." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006); *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988). Although the district court need not hold a de novo hearing, it is the Court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendations to which a party objects. *United States v. Remsing*, 874 F.2d 614, 618 (9th Cir. 1989).

## **DISCUSSION**

Because Robinson's Complaint is based upon Hawaii state law and does not allege any federal cause of action, this Court lacks subject matter jurisdiction over the dispute. Therefore, FHB's removal to this Court was improper, its objections to the F&R are meritless, and the case is REMANDED to State Court.

Removal of an action from state to federal court is proper if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Generally, an action is deemed to "arise under" federal law where it is a "federal law [that] creates the cause of action" that the plaintiff has asserted. *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013); *see also Ultramar Am. Ltd. v. Dwelle*, 900 F.2d 1412,

1414 (9th Cir. 1990) ("The plaintiff is the 'master' of his complaint; where he may pursue state and federal law claims, he is free to pursue either or both, so long as fraud is not involved.") (quoting *Savelson v. W. States Bankcard Ass'n*, 731 F.2d 1423, 1426–27 (9th Cir. 1984)).

There is, however, a narrow exception to the general rule that allows a complaint purporting to rest on state law to be recharacterized as one "arising under" federal law if the complaint is governed exclusively by federal law. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003); *see Hawaii ex rel Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987)). Under this so-called "complete preemption doctrine," a plaintiff's state cause of action may be recast as a federal claim for relief, making defendant's removal of the action proper on the basis of federal question jurisdiction. *Id.*; *see also* Wright & Miller, 14B Fed. Prac. & Proc. Juris. § 3722.1, 511 (4th ed. 2017)).

Based on its assertion that DIDA completely preempts Robinson's state law, usury cause of action under HRS § 478, FHB relies on the complete preemption exception to the well-pleaded complaint rule and asserts federal question jurisdiction under 28 U.S.C. § 1441 as the basis of removal in this case. Notice of Removal ¶ 8. "Federal jurisdiction," however, "must be rejected if there is any doubt as to the right of removal in the first instance," and a defendant who invokes

the federal court's removal jurisdiction "always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted) (noting that there is a "strong presumption" against removal jurisdiction); *accord Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011).

Pursuant to the discussion below, the Court finds that FHB has not met its burden in the instant case.

    A.    Conditional language apparent on the face of the statute demonstrates that Congress did not intend Section 521 of the DIDA to *completely* preempt state usury laws.

FHB contends that Section 521 of the DIDA completely preempts claims of usury against federally insured, state-chartered banks. There is conflicting authority on the question. The Third and Fourth Circuits have each found that complete preemption exists, *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 295 (3d Cir. 2005); *see Discover Bank v. Vaden*, 489 F.3d 594, 605 (4th Cir. 2007), *rev'd on other grounds*, 556 U.S. 49 (2009), *called into question by Cmty. State Bank v. Knox*, 523 F. App'x 925, 929 (4th Cir. 2013) (questioning whether the Circuit's 2007 holding in *Vaden* on this issue "remains intact after the Supreme Court's reversal"),[2] while the Eighth Circuit has found that it does not, *Thomas v. U.S.*

---

[2]Although FHB's papers assert that "[t]he First, Third, and Fourth Circuits hold that" DIDA completely preempts state usury laws, the Court notes that the First Circuit case cited did not, in fact, consider the same issue presented here. *See Greenwood Trust Co. v. Comm. of Mass.*, 971

*Bank Nat'l Ass'n ND*, 575 F.3d 794, 797, 798 (8th Cir. 2009) (rejecting bank-defendant's argument that "the similarity in language between DIDA and the National Banking Act ("NBA") compelled the conclusion that DIDA, like the NBA, created the exclusive federal remedy for usury claims against federally-insured, state-chartered banks"), *cert. denied*, 130 S. Ct. 3504 (2010). Neither the Supreme Court of the United States nor the Ninth Circuit Court of Appeals has weighed in on the issue,[3] while this Court's most recent decision on the subject is consistent with that of the Eighth Circuit, *see Robinson v. Bank of Hawaii*, CIV. NO. 17-00072, 2017 WL 2901333, at *3–5 (D. Haw. July 7, 2017) (considering the same issue the Court is presented with here and holding that complete preemption does not apply).[4]

---

F.2d 818, 824 (1st Cir. 1992) (examining whether DIDA expressly preempts *a specific state statute*, and finding that it does, without addressing the issue of the DIDA's *complete* preemption), *cert. denied*, 113 S. Ct. 974 (1993). The Court also notes that the Fifth Circuit has adopted (without analysis) one party's unopposed argument "that the same preemption analysis applies for both the NBA and DIDA," but at the same time held that the claims were not usury in nature and therefore preemption did not apply. *Hood ex. rel. Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 84 n.1 (5th Cir. 2013).

[3]Although the Ninth Circuit once suggested in dicta that complete preemption *might* be warranted in this context, the court explicitly stated that it was not deciding that question. *Cross-Country Bank v. Klussman*, 74 F. App'x 796, 797 (9th Cir. 2003).

[4]The Court notes that the Ninth Circuit did not affirm the analysis or conclusion of a prior Hawaii District Court, which found that DIDA completely preempted the plaintiff's state usury claims, *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 907 F. Supp. 2d 1188, 1213–14 (D. Haw. 2012), *rev'd*, 761 F.3d 1027 (9th Cir. 2014). Rather, the appellate court reversed the lower court's decision after finding that the plaintiffs were not asserting claims regarding *interest* at all, so complete preemption was inapplicable. *Id.* at 1037–38 ("We conclude that the Attorney General did not plead a completely preempted claim and that the district court therefore erred in finding federal question jurisdiction.").

Section 521 of the DIDA governs interest rates charged by federally insured, but *state*-chartered banks. *See* 12 U.S.C. § 1831d (entitled, "State-chartered insured depository institutions and insured branches of foreign banks"). Subsection (a) of the provision establishes the maximum interest rates allowed on loans made by these state-chartered institutions:

> In order to prevent discrimination against State-chartered insured depository institutions . . . with respect to interest rates, *if the applicable rate prescribed in this subsection exceeds the rate such State bank . . . would be permitted to charge in the absence of this subsection*, such State bank . . . may, notwithstanding any State constitution or statute which is hereby *preempted for the purposes of this section*, take, receive, reserve, and charge on any loan or discount made, or upon any . . . other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank . . . is located or at the rate allowed by the laws of the State . . . where the bank is located, whichever may be greater.

12 U.S.C. § 1831d(a) (emphasis added). The language emphasized above limits application of the DIDA to situations in which the permissible federal interest rate exceeds that prescribed by an individual state's law. *Id.* Thus, on its face, Section 521(a) plainly has no effect where a state's law allows state-chartered banks to charge a *higher* rate of interest than the federal statute. *Id.* Moreover, Section 521(a) expressly states that it only preempts "any State constitution or statute . . . *for purposes of this section*." *Id.* "In other words, conflicting state constitutions or statutes are not preempted for every and all purposes, but only for purposes of 'this

section.'" *Thomas*, 575 F.3d at 797–98 (rejecting bank-defendant's argument that "the similarity in language between DIDA and the NBA compelled the conclusion that DIDA, like the NBA, created the exclusive federal remedy for usury claims against federally-insured, state-chartered banks").

Section 521(b) of the DIDA mirrors the limiting language in subsection (a) and sets forth the available remedies for violations of that section:

> If the rate prescribed in subsection (a) of this section exceeds the rate such State bank . . . would be permitted to charge in the absence of this section, and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section, the taking, receiving, reserving, or charging a greater rate of interest than is allowed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from such State bank . . . taking, receiving, reserving, or charging such interest.

12 U.S.C. § 1831d(b). Notably, Section 521(b) expressly states that its remedies are only available "[i]f the rate prescribed in subsection (a) of this section"—i.e., the federal interest rate—"exceeds the rate such State bank . . . would be permitted to charge in the absence of this section"—i.e., under the state's own usury laws. *Id*. As with subsection (a), the Court finds that Congress expressly limited the applicability of the DIDA, thereby demonstrating that it did not intend the DIDA to

11

*completely* preempt state usury law. *Accord Thomas*, 575 F.3d at 797 ("[A] close examination of the statutory language indicates Congress very clearly intended the preemptive scope of DIDA to be limited to particular circumstances.").

In arguing that the Court should hold that Section 521 of the DIDA completely preempts all state usury laws regarding state-chartered banks, FHB highlights the Supreme Court's determination that Sections 85 and 86 of the NBA completely preempt claims of usury against *federally* chartered banks, *see Anderson*, 539 U.S. at 9–11, and argues that Section 521 of the DIDA "incorporates the operative language" of those provisions. Opp'n to Remand 6–7, ECF No. 24. As such, FHB asserts, this Court should extend the Supreme Court's NBA rule, just as the "[t]he First, Third, and Fourth Circuits" have done, and hold that the DIDA also "provides precisely the same preemption protection to state-chartered banks." Opp'n to Remand 7, 11 n.5. The Court declines to do so.

In contrast to Section 521's plainly conditional language, neither Section 85 of the NBA, which places "substantive limits on the rates of interest that national banks may charge," nor Section 86, which "sets forth the elements of a usury claim against a national bank, provides for a 2-year statute of limitations for such a claim, and prescribes the remedies available to borrowers who are charged higher rates and the procedures governing such a claim," *Anderson*, 539 U.S. at 9, contains similar limiting language. Rather, the general applicability of those NBA

12

sections demonstrates that "Congress intended the [National Bank Act] to provide the exclusive cause of action for usury claims against *national* banks[.]" *Id.* (emphasis added). Thus, FHB's analogy to the NBA preemption case law is unconvincing. *Thomas*, 575 F.3d at 797–98 ("[T]he language of DIDA, unlike the NBA, does not reflect Congress' intent to provide the exclusive cause of action for a usury claim against a federally-insured state-chartered bank."). FHB has therefore failed to meet its burden of establishing that complete preemption applies in this case. *Gaus*, 980 F.2d at 566; *see also Robinson v. Bank of Hawaii*, 2017 WL 2901333, at *3–6 (considering parallel issues to this case in the first instance, rather than reviewing an F&R, and holding that Section 521 of the DIDA's plain language evinces a congressional intent not to completely preempt state usury law in the same way that Sections 85 and 86 of the NBA do). The Court ADOPTS the F&R's conclusion to the same effect.

    B.    The Court agrees with the F&R, notwithstanding any specific objections FHB has raised to its reasoning and analysis.

In addition to challenging the Magistrate Judge's ultimate conclusion regarding preemption, FHB specifically objects to three aspects of the F&R. First, FHB argues that "the F&R fails to consider DIDA's legislative history," which FHB "cited extensively" in its Opposition Memorandum. Obj. Mem. 6 (citing the F&R's statement that it "carefully consider[ed] the statutory text, the relevant authority, and the arguments of the parties"). Second, FHB asserts that "the F&R

13

fails to consider the practical implications of its finding and recommendation." Obj. Mem. 8. That is, the Magistrate Judge allegedly erred by not considering "that state-chartered banks would be subject to drastically different legal standards and penalties for violations compared to national banks if DIDA did not completely preempt state law usury claims." Obj. Mem. 3. And third, FHB takes issue with the F&R for "disregard[ing] the weight of authority supporting DIDA preemption." Obj. Mem. 10. The Court OVERRULES each of these objections.

        1.      Conditional language on the face of the statute clearly evidences congressional intent regarding preemption, notwithstanding whatever legislative history may exist.

According to FHB, the Magistrate Judge erred by failing to explicitly discuss DIDA's legislative history before determining whether Congress intended DIDA to completely preempt state usury laws. Obj. Mem. 6. This objection is meritless.

In the F&R, the Magistrate Judge found that DIDA does not completely preempt state law usury claims "[a]fter carefully considering the statutory text, the relevant authority, and the arguments of the parties." F&R at 7. Although the F&R does not explain its exclusion of any legislative history from its analysis, the Court presumes that the reason was based on the rule that courts do not consider legislative history when congressional intent is evident from the plain language of the statute. *See United States v. Turner*, 689 F.3d 1117, 1119 (9th Cir. 2012). In

14

other words, "[t]he starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter." *Id.* (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (internal quotation marks and brackets omitted)); *see also In re U.S. for an Order Authorizing Roving Interception of Oral Commc'ns*, 349 F.3d 1132, 1144 (9th Cir. 2003) ("We may not read the legislative history to limit a statute's unmistakable directive.") (citing *United States v. Hagberg*, 207 F.3d 569, 574 (9th Cir. 2000); *Or. Nat. Res. Council, Inc. v. Kantor*, 99 F.3d 334, 339 (9th Cir. 1996)); *cf. Crosby v. Nat'l Foreign Trace Council*, 530 U.S. 363, 390 (2000) (Scalia, J., concurring in the judgment) ("[N]either statements of individual Members of Congress (ordinarily addressed to a virtually empty floor), nor Executive statements and letters addressed to congressional committees, nor the nonenactment of other proposed legislation, is a reliable indication of what a majority of both Houses of Congress intended when they voted for the statute[.]").

As noted above, the Court agrees with the F&R's determination that complete preemption does not exist because the statutory language on which the parties rely evinces a contingency—i.e., state law is preempted *only if* and when a specific interest rate comparison test is met. Since the language is unmistakably conditional, the F&R correctly concluded that Congressional intent could not have been to *completely* preempt the field. *See In re U.S.*, 349 F.3d at 1144; *Thomas*,

15

575 F.3d at 797. Thus, Congressional intent is evident from the face of the statute, and there was no reason to separately consider legislative history. *E.g.*, *Brown v. Gardner*, 513 U.S. 115, 120 (1994) ("[T]he text and reasonable inferences from it give a clear answer against the Government, and that, as we have said, is 'the end of the matter.'") (quoting *Shalala*, 508 U.S. at 409).

> 2. FHB has not demonstrated that a preemption analysis should involve equitable considerations.

Next, FHB asserts that the Magistrate Judge's reading would place FHB in a fundamentally unfair position relative to national banks because FHB and other state-chartered banks remain subject to different sets of interest rules, while national banks must comply only with federal law, given the completely preemptive effect of the NBA. Obj. Mem. 3, 8. FHB never explains, however, why the Court should consider unfairness or equity when evaluating the preemptive effect of a statute. Unfairness, it seems, is an issue best addressed by the legislative branch, rather than by the judiciary—at least in the instant context. Here, where Congressional intent is evident from the face of the statute, a separate, detailed policy discussion would be superfluous.

> 3. The Court's conclusion is in line with all *binding* precedent.

Third, FHB criticizes the F&R's disregard of what it considers to be the "weight of authority." Obj. Mem. 10. The objection, however, is inapposite.

16

As noted above, there is conflicting authority on the question of whether Section 521 of the DIDA completely preempts plaintiff's state usury claim against *state*-chartered banks, in the same way that the Supreme Court has found such complete preemption under the National Banking Act to exist when similar claims were asserted against *federally* chartered banks. *Compare, e.g.*, *Thomas*, 575 F.3d at 797 (8th Circuit determining no complete preemption); *with In re Cmty. Bank of N. Va.*, 418 F.3d at 295 (3rd Circuit holding complete preemption applies). None of that authority, however, is binding on this Court. *See Szajer v. City of Los Angeles*, 632 F.3d 607, 612 (9th Cir. 2011) ("We decline to take up the Szajers' invitation to follow the Seventh Circuit's approach because this Court must follow its own precedent.") (citing *United States v. Vasquez–Ramos*, 531 F.3d 987, 991 (9th Cir. 2008) (per curiam)); *Vasquez-Ramos*, *supra* ("We are bound by circuit precedent unless there has been a substantial change in relevant circumstances, or a subsequent en banc or Supreme Court decision that is clearly irreconcilable with our prior holding." (internal citations omitted)). Moreover, as the F&R points out (F&R at 11–12), the First Circuit has only found preemption as to a *specific* state statute, rather than complete preemption of every statute, *Greenwood Trust*, 971 F.2d at 824, and the Fourth Circuit has questioned whether its previous finding of complete preemption remained in effect after the Supreme Court reversed its holding on other grounds, *Knox*, 523 F. App'x at 929. Thus, the "weight of the

17

authority" is far from obvious. Based on its own review, the Court agrees that the contingency evident on the face of Section 521demonstrates that Congress could not have intended to completely preempt the field of state usury laws with respect to state chartered banks. Thus, the complete preemption exception to the well-pleaded complaint rule does not apply.

In sum, FHB has failed to meet its burden of demonstrating that this action "arises under" federal law for purposes of conferring subject matter jurisdiction on this Court under 28 U.S.C. § 1331. *See Washington*, 659 F.3d at 847; *Gaus*, 980 F.2d at 566. As a result, FHB improperly removed this case under 28 U.S.C. § 1441(a).

## **CONCLUSION**

The Court hereby ADOPTS the May 12, 2017 F&R, OVERRULES FHB's related objections, and GRANTS Robinson's Motion to Remand.

IT IS SO ORDERED.

DATED: August 24, 2017 at Honolulu, Hawai'i.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

*Linda Robinson, Individually And On Behalf Of A Class Of All Persons Similarly Situated v. First Hawaiian Bank, Doe Defendants 1-50*, CIV. NO. 17-00105 DKW-RLP, **ORDER ADOPTING THE MAY 12, 2017 FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447**